E. H. BUFFUM, *Appellant,* v. ERNEST J. LYTLE AND OTHERS, *Appellees.*

Opinion Filed November 25, 1913.

1. In a proceeding to enforce a mortgage lien a tax deed held by a party, an heir of the deceased mortgagor, may be decreed to be void.

2. A son living with his old father upon and in charge of property, mortgaged by the latter, will not be permitted by securing a tax deed thereto, to defeat the lien of the mortgagee, in the presence of facts indicating fraud or collusion, as against a non-resident mortgagee in ignorance of the non-payment of the taxes.

Appealed from Circuit Court of Marion County; W. S. Bullock, Judge.

Decree reversed.

*Hocker & Martin,* for Appellant;

*W. K. Zewadski,* for Appellees.

COCKRELL, J.—On January 1, 1894, Frank H. Lytle and his wife Sallie E. Lytle executed to the Buffum Loan & Trust Company a mortgage on an orange grove of about eleven acres, fronting upon Lake Weir in Marion county. In October, 1912, E. H. Buffum, as the assignee, filed his bill to enforce the mortgage lien, making as

parties the three sons and sole heirs of the mortgagors who were dead. A decree was entered, dismissing the bill, upon a finding that the lien of the mortgage had been lost by reason of an independent tax title in one of the sons, the defendant E. J. Lytle.

In Pearson v. Helvenston, 50 Fla. 590, 39 South. Rep. 695, as also in Brown v. Atlanta National Building & Loan Ass'n, 46 Fla. 492, 35 South. Rep. 403, this court has recognized the impropriety of bringing into foreclosure suits independent holders of tax title, but the bill and the proofs now before us show clearly that E. J. Lytle occupies no such relation.

The eleven acres covered by this mortgage was but a part of a larger tract of land, practically under one enclosure; the title to this eleven acres constituted the grove and stood in the name of Frank H. Lytle, while the title to the rest of the tract, upon which was the common residence of Frank H. Lytle, his wife, and his unmarried son E. J. Lytle, was in the name of Mrs. Lytle. In that home both Captain and Mrs. Lytle spent the last years of their life, and there they died; E. J. Lytle continued to reside there after their death, the other two children having long theretofore established their homes elsewhere. The mother several years prior to her death placed E. J. Lytle in charge of her property, and there can be no doubt upon the evidence that this same son also had charge in large measure of the grove also under such direction as the father enfeebled by advancing years could give him.

Under these circumstances the son in 1900 obtained a tax deed to the mortgaged portion, knowing of the outstanding mortgage then owned by a resident of a distant State, but took no steps to notify him of this adverse claim. Nor is there evidence that the immediate neigh-

bors knew or could have known from any outward visible action of Edward Lytle that there had been any change in the possession of this grove, nor of any assertion by him of a claim of ownership under the tax deed.

Ernest asserts that friction arose out of this tax deed between himself and his father before the latter's death, but he does not show any ouster of the father from the full possession theretofore enjoyed in this grove, of which the public could have been advised; nor does the evidence along this line tend to show more than a disapproval by his old father of his conduct in acquiring a tax deed, which the father did not think would stand the scrutiny of the courts.

We are not disposed to find that the old father deliberately conspired with the son to cut off the lien he had so formally created to secure an honest debt, but it was either that or the son who was under statutory obligation to support the father took advantage of his impoverished condition to gain an advantage for himself to the exclusion of all others having moral and legal claims upon the father, and especially as against the mortgagee who, the son shows, was exceedingly lenient in not enforcing the terms of the mortgage in consideration of the hardships cast upon so many orange growers in this State by the freeze of 1895.

It is true that under the mortgage, the mortgagee might himself have paid the taxes and thereby added to the indebtedness secured by the mortgage; but he was not in possession, nor was the property assessed to him, nor was he given personal notice that the owner was not performing his part of the contract which required him to pay the taxes.

The law required thirty days notice to the owner of the land before the issuance of the tax deed. If this notice

was given, it was given by the son to his father, whose correspondence he himself conducted, and the father, either through connivance or through utter financial inanility, of which the son had knowledge, failed to redeem the property, or to notify the mortgagee of the impending loss of the security.

The tax deed smacks too much of fraud to be permitted to stand, and the holder has not sufficiently cleared away the *prima facie* badge of collusion that exists when one in such close relationship by blood and otherwise to the mortgagor attempts to acquire a superior title by a tax deed as against the mortgagee.

The decree is reversed at the cost of the defendant Ernest J. Lytle.

SHACKLEFORD, C. J., AND TAYLOR AND WHITFIELD, J. J., concur.

HOCKER, J., not participating.